## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR AN ARREST WARRANT

I, Bryan Blakeley, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION

1. I am a Special Agent employed by the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations ("HSI") and have been employed as a Special Agent since November 2023. I am an investigative or law enforcement officer of the United States who is empowered to conduct investigations of or to make arrests for offenses enumerated in Title 18, United States Code, Section 2516. As a Special Agent, my responsibilities include conducting investigations of the alleged manufacture, distribution and possession of controlled substances, importation of controlled substances, smuggling of goods into the United States, firearm's violations, and other related offenses.

2. I have successfully completed the Criminal Investigator Training Program (CITP) at the Federal Law Enforcement Training Center in Glynco, Georgia. I also graduated from the Homeland Security Investigations Special Agent Training (HSISAT). During HSISAT, I received extensive training conducting investigations related to firearms violations and narcotics smuggling, which includes interdiction and distribution activities where investigations commonly conducted are related to violations of Titles 8, 18, 19, 21 and 31 of the United States Code (USC).

3. Your affiant is presently assigned to Homeland Security Investigations (HSI), San Juan, Airport Investigations and Tactical Team (AirTAT). The AirTAT investigates international drug trafficking and money laundering organizations that utilize the aviation domain to smuggle narcotics and currency into and through the United States

4. As a Special Agent, your affiant's job and responsibilities include conducting investigations of alleged manufacturing, distributing or possession of controlled substances, 21 U.S.C. § 841 (a) (1)); importation of controlled substances 21 U.S.C § 952 (a)); smuggling of goods into the United States, 21 U.S.C. § 545; Immigration violations Title 8, United States Code; possession with the intent to distribute narcotic drug controlled substances while onboard a vessel subject to the jurisdiction of the United States 46 U.S.C. § 70501 et seq.; and related offenses

5. The information contained in this affidavit is based on my personal knowledge and observations during the course of this investigation, information conveyed to me by other law enforcement officials, and my review of records, documents, and other physical evidence obtained during this investigation. This affidavit is not intended to include every fact observed by me or known by the government.

6. Specifically, this affidavit is submitted for the limited purpose of establishing probable cause Paola ROMERO-Marin committed violations of 21 U.S.C. §§ 846, 841(a)(l) & (b)(1)(A)(ii) (Conspiracy to possess with intent to distribute a mixture or substance containing five kilograms or more of cocaine). Therefore, does not contain each and every fact known to me or other law enforcement agents concerning this investigation.

## Facts in Support of Probable Cause

7. On June 13th, 2025, at approximately 2:00pm, Homeland Security Investigations (HSI), Airport Investigations and Tactical Team (AirTAT) Task Force Officers (TFOs) were conducting Domestic Flight Operations at the Luis Muñoz Marin International Airport (LMMIA).

8. At approximately 2:10pm, HSI TFO received an alert from the LMMIA security team regarding a vehicle, which the TFO recognized from previous observations. A female individual, later identified as Paola ROMERO-Marin, was dropped off at the LMMIA with a red suitcase. The red suitcase already had the United States Department of Agriculture (USDA)

inspection stickers.

9. ROMERO-Marin entered the JetBlue area of LMMIA with the red suitcase. She went directly to the JetBlue checked baggage machine, printed the tags for the suitcase and went to the front desk to check the red suitcase. ROMERO-Marin did not stop at the USDA inspection point which is required by law to fly from Puerto Rico to any domestic destination.

10. At the front desk, ROMERO-Marin checked in the red suitcase and proceeded to the Transportation Security Administration (TSA) JetBlue checkpoint. ROMERO-Marin was carrying a black backpack and pink purse.

11. At the loading ramp area, HSI TFOs identified the red suitcase that ROMERO-Marin had been carrying. At approximately 2:30pm, K9 Juicy alerted positively to narcotics inside the red suitcase. The suitcase bore a JetBlue tag reflecting the destination of BDL (Hartford, CT), and the tag displayed the name "ROMERO MAR/ PAOL".

12. HSI TFOs secured the red suitcase and transported it to LMMIA Terminal A, where ROMERO-Marin was located.

13. Agents approached ROMERO-Marin at the JetBlue jet bridge with the red suitcase and asked if it belonged to her. ROMERO-Marin responded, "Yes."

14. ROMERO-Marin gave consent to the agents to open the suitcase. Upon opening it, HSI TFOs observed a brick-shaped object wrapped in carbon paper. Based on their training and experience, this type of wrapping is consistent with the packaging of unlawfully concealed controlled substances. The TFOs then escorted the suitcase and ROMERO-Marin to the AirTAT facilities at LMMIA.

15. At approximately 3:50pm, ROMERO-Marin signed a written consent for the search of the red suitcase, her iPhone 16, a tablet, her backpack and a purse. She also provided the passcodes for the cellphone.

16. Upon opening the red suitcase, the agents observed several pieces of clothing, and ten brick-shaped objects wrapped in carbon paper.

17. A chemical analysis of the brick-shaped objects revealed that they contained cocaine. The seized bricks of cocaine weighed approximately 11.29 kilograms. Based on training and experience, this quantity of cocaine is consistent with distribution.

18. Agents advised ROMERO-Marin of her Miranda rights in the Spanish language, and she knowingly and voluntarily waived those rights in writing. During the interview, ROMERO-Marin admitted she was going to be paid $3,000 to deliver the suitcase to Connecticut. She stated that she knew that she was transporting either drugs or guns. Also, ROMERO-Marin stated knowing that what she was doing was illegal.

## CONCLUSION

19. Based on the foregoing facts and circumstances, your affiant submits that probable cause exists to believe that ROMERO-Marin, Paola committed violations of 846, 841(a)(1) & (b)(1)(A)(ii) (Conspiracy to possess with intent to distribute 5 kilograms or more a mixture or substance containing a detectable amount of cocaine).

I hereby declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge.

Bryan Blakeley
Special Agent
Homeland Security Investigations
San Juan, Puerto Rico

Sworn and subscribed to me in accordance with the requirements of FRCP 4.1 this 13th day of June at 6:08 p.m. 2025, in San Juan, Puerto Rico.

Digitally signed by Hon. Giselle López-Soler

Giselle López Soler
United States Magistrate Judge